

**SO ORDERED.**

**SIGNED this 13 day of June, 2005.**

*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br>GREGORY C. DOWNING and<br>MARY STECH-DOWNING,<br><br>        DEBTORS. | CASE NO. 03-15942<br>CHAPTER 7 |
| NORTH AMERICAN SAVINGS BANK,<br>a federal savings bank<br>        PLAINTIFF<br>v.<br><br>GREGORY C. DOWNING AND<br>MARY STECH-DOWNING,<br>        DEFENDANTS | ADVERSARY NO. 04-5161 |

# MEMORANDUM AND ORDER
## GRANTING IN PART AND DENYING IN PART
## GREGORY C. DOWNING AND MARY A. STECH-DOWNING'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND DENYING IN PART
## MOTION FOR SUMMARY JUDGMENT FILED BY
## NORTH AMERICAN SAVINGS BANK

There are two motions before the Court: Gregory C. Downing and Mary A Stech-Downing's Motion for Partial Summary Judgment on Counts I, II, IV, V, and VI of North American Saving Bank's Complaint to Deny Discharge pursuant to 11 U.S.C. § 727 and Turnover of Property of the Estate pursuant to 11 U.S.C. § 542;[1] and the Motion for Summary Judgment Filed by Plaintiff North American Savings Bank.[2] North American Savings Bank (North American) appears by Brett D. Anders and Christian J. Kelly, Polsinelli, Shalton, Welte, Suelthaus, PC. The Debtors, Gregory C. Downing and Mary Stech-Downing (Debtors), appear by David G. Arst, Arst & Arst, PA. There are no other appearances.

**I. Summary Judgment Standards.**

---

[1] Doc 39. Count III of the Complaint, the claim to deny discharge pursuant to 11 U.S.C.A. § 727 (a)(4) because of failure to properly disclose the ownership of jewelry, a fur coat, a coin collection, and an interest in an oil well, is identical to Count II of the United States Trustee's Complaint to Deny Discharge Pursuant to 11 U.S.C. § 727, Adversary No. 04-5083, filed on March 30, 2004. The Trustee has filed a Motion for Summary Judgment in that adversary proceeding. Although the Debtors do not move for summary judgment on this count, plaintiff North American Savings Bank does. The Court is deferring its ruling on that count of the this adversary complaint and will resolve both North American Savings Bank's Motion for Summary Judgment on Count III and the Motion for Summary Judgment filed by the United States Trustee in a single Memorandum and Order to be filed in this adversary and Adversary No. 04–5083.

[2] Doc. 45. See note 1, above.

2

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitle to judgment as a matter of law."[3] Genuine issues of material facts are factual disputes that may affect the outcome of the case and one that a reasonable trier of fact could find in favor of either party.[4] Therefore, in order for the nonmoving party to defeat a motion for summary judgment it need only present evidence from which a trier of fact might return a verdict in their favor.[5] In determining this, all evidence and inferences are viewed in the light most favorable to the nonmoving party.[6] If the nonmoving party demonstrates that a reasonable jury could find for it, there is a genuine issue of material fact and summary judgment is inappropriate.[7] However, Federal Rule 56(e), made applicable in adversary proceedings by Bankruptcy Rule 7056,[8] provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

---

[3] Fed. R. Civ. P. 56(c). Future references to the rules in the text shall be to the rule number only.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.* at 257.

[6] *Id.* at 255.

[7] *Id.* at 257.

[8] Fed. R. Bankr. P. 7056. Future references to the rules in the text shall be to the rule number only.

3

genuine issue for trial. If he does not respond, summary judgment, if appropriate shall be entered against him.

Summary judgment is generally not appropriate when the issue requires a determination of the state of mind.[9] It is important, and ordinarily essential, that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-examination, of a witness whose subjective motive is at issue.[10]

## II. Count I - Complaint to Deny Discharge Pursuant to Subsection 727(a)(2)(A).

In Count I , North American alleges that discharge should be denied pursuant to subsection 727(a)(2)(A) because shortly before filing, Debtors liquidated approximately $261,500 of nonexempt assets and applied the proceeds to pay down the mortgages on the property claimed as their exempt homestead. North American alleges that the transfers constitute a basis to deny discharge because they were made with intent to hinder, delay and/or defraud Debtors' creditors.

### A. Statement of Uncontroverted Facts.

From a review of the stipulations in the pretrial order and the briefs of the parties, the Court finds that the following facts relevant to Count I are uncontroverted:[11]

---

[9] *Consolidated Electric Co. v. United States*, 355 F.2d 437, 438 (9th Cir. 1966).

[10] *Id.* at 438-39.

[11] Plaintiff North American responded to many of the Debtors' statement of uncontroverted facts set forth in their motion for partial summary judgment, by stating that plaintiff was without knowledge sufficient information at this time to determine the validity of the facts set forth by the Debtors. The Court finds this as an insufficient basis to establish a controverted fact. North American's statement is not supported by any reason why it could not present an affidavit of facts essential to justify its opposition, as required by Rule 7056, which incorporates Fed. R. Civ. P. 56(f). Further, discovery in this case is complete. If there is evidence to controvert the Debtors' statements, North American should have brought the same to the attention of the Court.

1. The Debtors filed a voluntary petition for relief pursuant to Chapter 7 on October 27, 2003.

2. On or about November 13, 2003, D. Michael Case was appointed to serve as the Chapter 7 Trustee

3. The Debtors' Schedule C listed the Debtors' residence located at 11 Grand Mere, Wichita, Kansas (the Residence) as an exempt homestead pursuant to K.S.A. § 60–2301.

4. At the time of their bankruptcy, the Debtors were in debt in the approximate amount of $9,362,800, consisting of approximately $1,882,000 in secured claims and approximately $7,480,000 in unsecured, nonpriority claims.

5. North American is an unsecured non-priority creditor in the approximate amount of $900,000 by reason of the Debtors' guarantee of a loan made by North American secured by real estate owned by a business entity.

6. In 2003, prior to filing for bankruptcy, and as part of the bankruptcy planning process, the Debtors sold approximately $233,530 in non-exempt stock and withdrew approximately $27,500 cash from their checking account.

7. In September 2003, after the liquidation of assets described above, the Debtors paid $98,000 to Cendant, the holder of the first mortgage on their Residence, leaving a balance on the mortgage note as of the date of filing of approximately $952,000.

8. In September 2003, after the liquidation of assets described above, the Debtors paid $163,306 to Emprise Bank, the holder of the second mortgage on the Residence, leaving a balance on the mortgage note as of the date of filing of approximately $24,000.

9. On the date of filing, the Debtors had $150 in their checking account.

10. Post-petition, in approximately November 2003, the Debtors borrowed approximately $50,000 to $72,000 from Emprise Bank on the line of credit secured by their Residence.

11. During the month prior to Debtor's bankruptcy filing Debtor Gregory Downing had worked very little.

12. Debtor worked one week in December 2003 and reached full-time in January, 2004.

**B. Analysis and Conclusions of Law.**

North American contends that the Debtors should be denied discharge under subsection 727(a)(2)(A) because of their pre-petition conversion of non-exempt into their homestead. Subsection 727(a)(2)(A) provides:

> (a) The court shall grant the debtor a discharge, unless –
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or a officer of the court charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of the petition.

In order for the Debtors to be denied a discharge under this section, North America must show by a preponderance of the evidence that (1) the Debtor transferred or concealed (2) property of the estate, (3) within the one year period prior to filing for bankruptcy relief, (4) with the intent to hinder, delay or defraud a creditor.[12] When ordering denial of discharge based upon the pre-petition conversion of assets, the Court must find actual intent to defraud creditors.[13] Fraudulent intent may be inferred from

---

[12] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir.1997).

[13] *Marine Midland Business Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991)

6

specific indicia of fraud.[14] The Debtors' desire to convert assets into exempt property by itself does not constitute actual intent to defraud;[15] more than conversion must be shown to deny discharge. The following have been listed as extrinsic evidence which may indicate actual intent to defraud in the conversion of nonexempt and exempt assets:

> That the debtor obtained credit to buy the exempt property;
> that the conversion occurred after entry of a large judgment against the debtor;
> that the debtor had engaged in a pattern of sharp dealing before bankruptcy;
> that an unusually large amount of property was claimed as exempt;
> that the debtor misrepresented the value of assets and kept the transfer secret; and
> that the conversion rendered the debtor insolvent.[16]

In this case, the uncontroverted facts are insufficient for the Court to grant either the Debtors' or North American's motion for summary judgment. Although all elements for denial for discharge except fraudulent intent are established, the uncontroverted facts fail to include sufficient evidence concerning the facts and circumstances of the conversion of assets for the Court to find by a preponderance of the evidence that the Debtors had fraudulent intent, as would be required to grant summary judgment to North American. North American's theory is that the Debtors liquidated their nonexempt assets and converted them to their exempt homestead with intent that they would immediately after filing borrow on the line of credit secured by the Residence to cover living expenses. The uncontroverted evidence supporting this theory is limited to the amount of Debtors' cash on the

---

[14] *Id.*

[15] *Id.*

[16] 6 *Collier on Bankruptcy* ¶ 727 .02[3][g] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 15th ed. Rev. 2005).

7

date of filing, Gregory Downing's work history, and the borrowing on the line of credit secured by the Residence very shortly after filing for bankruptcy relief. Although this evidence may be an indicia of fraud, it is not sufficient to establish intent to defraud in the face of the Gregory Downing's testimony, which must be construed in his favor, that he thought he had sufficient assets to meet post-petition expenses and that his return to work was unexpectedly delayed because of his father's death.

Further, as to the Debtors' motion, because of the evidence supporting North American's theory, the Court cannot hold that North American will be unable to show fraudulent intent at trial, as would be required to grant summary judgment in favor of the Debtors. The Debtors have not submitted uncontroverted facts showing that North American will be unable to show at trial the conversion was undertaken with fraudulent intent.

For the foregoing reasons, the Court denies both the Debtors' and North American's motions for summary judgment on Count I.

### III. Count II - Complaint to Deny Discharge Pursuant to Subsection 727(a)(4) because Schedule C, Submitted under Oath, Claimed a Homestead Exemption in Excess of that Allowed in Kansas.

North American alleges in Count III that the Debtors should be denied discharge pursuant to subsection 727(a)(4)(A) because they claimed their Residence, located in Wichita, as an exempt homestead pursuant to K.S.A 60-2301. That statute limits the extent of a homestead located within a city to one acre or less. It is uncontroverted that the legal description of the Debtors' Residence as stated in their Schedule A, real property, and Schedule C, property claimed as exempt, included approximately 7 acres. The Declaration Concerning Debtor's Schedules, which was signed by both Debtors, included the a declaration under penalty of perjury that each Debtor had read the schedules

8

and "that they are true and correct to the best of my knowledge, information, and belief."

### A. Statement of Uncontroverted Facts.

1. Debtors' Residence was listed on Schedule A as having the following legal description:

> Lot 3, Block one, Estates at Belle Terre Second Wichita, Sedgwick County, KS, commonly known as 11 Grand Mere, Wichita, KS 67230.

2. The foregoing legal description encompasses approximately 7 acres.

3. The Residence is located in the City of Wichita.

4. Debtors claimed their Residence, including all the real property in the foregoing legal description, as exempt pursuant to K.S.A. 60–2301 on Schedule C, filed on November 27, 2003.

5. No timely objection to the Debtors' homestead exemption was filed.

6. The time to object to the Debtors' homestead had expired before the filing of this Adversary Complaint on July 12, 2004.

7. On the date of filing, Debtors' Residence was encumbered by two mortgages on the entire tract in the amounts of $952,000 and $24,000, respectively.

8. Debtors Schedule A assigned a value of $1,400,000 to the Residence.

9. The Chapter 7 Trustee, after examination of the pertinent documents, and a review of other relevant facts, concluded that there was no value in the Debtors' Residence which could be administered for the benefit of the Debtors' estate.

### B. Analysis and Conclusions of Law.

North American alleges that the Debtors should be denied discharge pursuant to subsection 727(a)(2)(A) because the Debtors' Schedules, signed under penalty of perjury, included a homestead

9

exemption which exceeded the one acre allowed by K.S.A. 60-2301. Subsection 727(a)(2)(A) provides:

> (a) The court shall grant the debtor a discharge, unless -
> ***
> (4) the debtor knowingly and fraudulently, in or in connection with the case -
> (A) made a false oath or account;

"In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath, and that the oath relates to a material fact."[17] Omissions of property from the schedules[18] and the overstatement of an exemption amount may constitute a false oath.[19] "But a false statement that has no effect in the case is not grounds for denying a discharge."[20]

The Court holds that the Debtors are entitled to summary judgment on this claim. North American fails to provide any evidence or show a material issue of controverted fact in support of the element of materiality. North American argues that because the homestead description included approximately seven acres, as a matter of law, Debtors were entitled to no homestead exemption, rather than a homestead exemption limited to one acre. If the entire Residence were nonexempt and

---

[17] *In re Brown*, 108 F.3d at 1294.

[18] *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990).

[19] *See Parnes v. Parnes (In re Parnes)*, 200 B.R. 710 (Bankr. N.D.Ga. 1996)(holding that a discharge was not barred by §727(a)(2)(A) for overstating exemptions because debtor's reliance on the advice of his counsel led the Court to conclude that the debtor did not have the necessary fraudulent intent).

[20] 6 *Collier on Bankruptcy* ¶727.04[1][b](Alan N. Resnick & Henry J. Sommer, eds.-in-chief 15th ed. Rev. 2005), citing *Coccia v. Fischer (In re Fischer)*, 4 B.R. 517 (Bankr. S.D. Fla. 1980).

the Debtors' value of $1,400,000 is close to accurate, it is correct that there would be value for the estate after the payment of the two claims secured by the Residence. However, the only authority for this position that the entire Residence is not exempt is an 8th Circuit BAP case,[21] which does not construe Kansas exemptions. The Court holds that the Debtors' claim of excess acreage, if brought to the attention of the Court in the context of a challenge to the homestead exemption,[22] would not have precluded the Debtors from being granted the one acre exemption to which they were entitled under Kansas law. The only error in the schedules relating to the homestead exemption was the claim of exemption for seven acres, rather than one acre. The Trustee's uncontroverted affidavit that the nonexempt six acre portion is of no value to the estate leads the Court to conclude that the Debtors' false claim of exemption of the excessive six acres of homestead property was not material. Denial of discharge cannot be based upon this error in the Schedules.

Further, the Court finds that the Trustee's analysis is correct. The affidavit of the Trustee states, "after examination of the pertinent documents, and a review of other relevant facts, I concluded that there was no value in the debtors' homestead located at 11 Grand Mere, Wichita, Kansas 67230, which I could administer for the benefit of the debtor's bankruptcy estate." The Kansas law of reverse marshaling of assets fully supports the Trustee's conclusion. Assuming that the Debtors' homestead exemption had been limited to the one acre on which their home is located, pursuant to the doctrine of marshaling of assets as applied to exempt homestead property, the Debtors would have had the right to

---

[21] *Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68 (8th Cir. BAP 2001).

[22] There was no timely objection to the Debtors' homestead exemption. The Debtors' claimed homestead is therefore allowed, even though it exceeded the permitted acreage. *Taylor v. Freeland & Krnoz*, 503 U.S. 638 (1992).

11

require the two creditors holding debts secured by both the exempt and the nonexempt portions of the Residence satisfy their claims first from the six acres of nonexempt property before looking to the value of the exempt one acre track.[23] "In Kansas, the creditor with both homestead and nonhomestead property as collateral, must seek satisfaction of the debtor out of the nonexmpt property before proceeding against the homestead."[24] This has been the rule in Kansas since 1889, when the Kansas Supreme Court stated:

> Where a mortgage upon the homestead and other real estate is being foreclosed, the mortgagor has the right, as against the mortgagee and all other creditors and lienholders whose rights were not prior or superior to those of the holder of the mortgage, to require that before the homestead shall be resorted to for the purposes satisfying the mortgage debt all the other mortgaged property shall first be exhausted.[25]

Because of this rule of Kansas law, if six acres of the Residence property had been found non-exempt and the Trustee had attempted to sell the non-exempt portion, the estate would have realized no value from the sale. In the event of such a sale, the holders of the mortgages on the seven acres would have been required to first satisfy their claims from the nonexempt portion. The principal debt secured by the entire tract was approximately $976,000. This amount, together with interest, costs of sale, and other charges secured by the mortgages, clearly exceeded the reasonable value of the unimproved six acre portion of the property. To satisfy the mortgagees' claims and leave equity for the

---

[23] *Frick Co. v. Ketels*, 42 Kan. 527, 22 Pac. 580 (1889); *see also In re Estate of Dahn*, 204 Kan. 535, 543, 464 P.2d 238 (1970) (recognizing the continued validity of *Ketels*).

[24] *In re Leonard*, No. 96-10440-12, slip op. at 4 (Bankr. D. Kan. Aug. 20, 1996) *citing In re Bryant*, No. 86-12129, slip op. at 6 (Bankr. D. Kan. 1988)

[25] *Frick Co. v. Ketels*, 42 Kan. at 527.

12

estate, the six acres would need to have a value in excess of $163,000 per acre. There is evidence in the record that the six acres is located in a flood plain, is encumbered by easements, and is not suitable for development. The Debtors' secured creditors, not the estate, would have been the beneficiaries of any sale of the six acres of the Residence which exceeded the Kansas statutory homestead exemption. Because the six acres of property not qualifying for the Kansas exemption would have been of "inconsequential value or benefit to the estate," the Debtors' excessive homestead claim was not material and discharge cannot be denied based upon 727(a)(2)(A).

For the foregoing reasons, the Court grants summary judgment to the Debtors on count II of the adversary complaint.

**IV. Count IV - Turnover of Homestead Pursuant to Section 542.**

In Count IV of the Adversary Complaint, North American alleges that the Debtors' residence is not exempt pursuant to Kansas law or any other law, and therefore as nonexempt property it should be turned over to the chapter 7 trustee in accordance with section 542.
Although the Debtors in response to the summary judgment motion did not contend that the claim should be dismissed, the Court finds, for the reasons stated in the Memorandum and Order Denying Motion of Creditor North American Savings Bank for Authority to Prosecute Claims on Behalf of Estate and for Grant of Administrative Claim, filed on June 13, 2005, that Count IV fails to state a claim upon which relief should be granted and therefore grants judgment to the Debtors.

**V. Count V - Turnover of Post-petition Loan Proceeds Pursuant to Section 542.**

Count V of the Adversary Complaint is similar to Count IV. It prays pursuant to section 542 for an order of turnover of post-petition loan proceeds, which North American claims are property of

13

the estate. Although the Debtors in response to the summary judgment motion did not contend that the claim should be dismissed, the Court finds, for the reasons stated in the Memorandum and Order Denying Motion of Creditor North American Savings Bank for Authority to Prosecute Claims on Behalf of Estate and for Grant of Administrative Claim, filed on June 13, 2005, that Count V fails to state a claim upon which relief should be granted and therefore grants judgment to the Debtors.

**VI. Count VI - Recovery of Post-petition Transfers Pursuant to Section 549.**

In Count VI, North American alleges that pursuant to section 549 it may recover the proceeds of the Debtors' post-petition loans secured by their homestead because they are property of the estate. Although the Debtors in response to the summary judgment motion did not contend that the claim should be dismissed, the Court finds, for the reasons stated in the Memorandum and Order Denying Motion of Creditor North American Savings Bank for Authority to Prosecute Claims on Behalf of Estate and for Grant of Administrative Claim, filed on June 13, 2005, that Count VI fails to state a claim upon which relief should be granted and therefore grants judgment to the Debtors.

**VII. Conclusion.**

For the foregoing reasons, the Court denies the motion of First American Savings Bank for summary judgment on Counts I, II, IV, V, and VI; grants the Debtors' motion for partial summary judgment on Counts II, IV, V, and VI; denies the Debtors' motion for partial summary judgment on Count I; and defers ruling on First American's motion for summary judgment on Count III. The Court will rule on this Count when the Court addresses the motion of the United States Trustee for summary judgment in Case No. 04-5083, which raises the identical objection to discharge. Based upon this ruling, trial shall be necessary on Count I. Whether trial shall be necessary on Count III will be

determined after briefing on the United States Trustee's motion for summary judgment in Adversary No. 04-5083.

BE IT SO ORDERED.

###