

**SO ORDERED.**

**SIGNED this 24 day of June, 2005.**

*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>GREGORY C. DOWNING and<br>MARY A. STECH-DOWNING,<br><br>          DEBTORS. | CASE NO. 03-15942<br>CHAPTER 7 |
| MARY E. MAY, UNITED STATES TRUSTEE,<br><br>          PLAINTIFF,<br><br>v.<br><br>GREGORY C. DOWNING and<br>MARY A. STECH-DOWNING,<br><br>          DEFENDANTS. | ADV. NO. 04-5083 |

1

| | |
|---|---|
| **NORTH AMERICAN SAVINGS BANK, a federal savings bank,** <br><br>　　　　　PLAINTIFF, <br><br>v. <br><br>**GREGORY C. DOWNING and MARY A. STECH-DOWNING,** <br><br>　　　　　DEFENDANTS. | ADV. NO. 04-5161 |

# MEMORANDUM AND ORDER DENYING
# UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
# AND DENYING
# NORTH AMERICAN SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT ON COUNT III

There are two motions before the Court: The motion of the United States Trustee for summary judgment on the United States Trustee's Compliant to Deny Discharge Pursuant to 11 U.S.C. § 727, Adversary No. 04-5083; and North American Savings Bank's motion for summary judgment on Count III of North American Saving Bank's Complaint to Deny Discharge pursuant to 11 U.S.C. § 727 and Turnover of Property of the Estate pursuant to 11 U.S.C. § 542, Adversary No. 04-5161.[1] Both claims are brought pursuant to 11 U.S.C.A. § 727(a)[2] objecting to the Debtors' discharge

---

[1] The Court by Memorandum and Order Granting in Part and Denying in Part Gregory C. Downing and Mary A. Stech-Downing's Motion for Partial Summary Judgment and Denying in Part Motion for Summary Judgment filed by North American Savings Bank, filed in Adversary No. 04-5161 on June 13, 2005, denied the motion of North American for summary judgment on all counts of the adversary complaint in Case No. 04-5161 except Count III and expressly reserved ruling upon Count III.

[2] Future references to the Bankruptcy Code in the text shall be to the Code section only.

2

because of conduct relating to the exclusion from schedules and valuation of jewelry, a fur coat, a coin collection, and an interest in an oil well.

The United States Trustee (US Trustee) appears by Joyce Owen. North American Savings Bank (North American) appears by Brett D. Anders and Christian J. Kelly, Polsinelli, Shalton, Welte, Suelthaus, PC. The Debtors, Gregory C. Downing and Mary Stech-Downing (Debtors), appear by David G. Arst, Arst & Arst, PA. There are no other appearances.

For the reasons stated below, the Court denies both motions and holds that controverted issues of material fact preclude summary judgment in both adversary cases on the claims for denial of discharge under subsection 727(a) based upon the Debtors' conduct relating to their jewelry, fur coat, coin collection, and an interest in an oil well.

**I. SUMMARY JUDGMENT STANDARDS.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A genuine issue of material fact is a factual dispute that may affect the outcome of the case and one that a reasonable trier of fact could find in favor of either party.[4] Therefore, in order for the nonmoving party to defeat a motion for summary judgment it need only present evidence from which a trier of fact might return a verdict in their favor.[5] In determining this, all evidence and inferences are viewed in the light most

---

[3] Fed. R. Civ. P. 56(c). Future references to the rules in the text shall be to the rule number only.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.* at 257.

favorable to the nonmoving party.[6] If the nonmoving party demonstrates that a reasonable jury could find for it, there is a genuine issue of material fact and summary judgment is inappropriate.[7] However, Federal Rule 56(e), made applicable in adversary proceedings by Bankruptcy Rule 7056,[8] provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate shall be entered against him.

Summary judgment is generally not appropriate when the issue requires a determination of the state of mind.[9] It is important, and ordinarily essential, that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-examination, of a witness whose subjective motive is at issue.[10]

**II. POSITIONS OF THE PARTIES.**

The US Trustee and North American both allege that the Debtors should be denied discharge pursuant to subsection 727(a)(4)(A) because of alleged false oaths in their Schedules and at the 341 Meeting relating to their ownership and correct value of jewelry, a fur coat, a coin collection, and an

---

[6] *Id.* at 255.

[7] *Id.* at 257.

[8] Fed. R. Bankr. P. 7056. Future references to the rules in the text shall be to the rule number only.

[9] *Consolidated Electric Co. v. United States*, 355 F.2d 437, 438 (9th Cir. 1966).

[10] *Id.* at 438-39.

interest in an oil well.[11] Because of the similarity of the claims of North American and the US Trustee under subsection 727(a)(4)(A), no distinctions will be made between the two complaints. In addition, the US Trustee, based upon substantially the same facts, alleges the Debtors' conduct constituted fraudulent omission and concealment of the same personal property, such that denial of discharge pursuant to subsection 727(a)(2) is warranted.[12] As to all allegations, both the US Trustee and North American argue that the uncontroverted facts entitle them to judgment as a matter of law.

The Debtors deny that the conditions for denial of discharge under both subsections are present. The Debtors allege: That they did not know that it was necessary to list the wedding ring; that their scheduled value for the fur coat and jewelry (other than the wedding ring) was not fraudulent or unreasonable; that they have always cooperated with the Chapter 7 Trustee and have not hidden any assets; that they forgot to list the coins on their initial bankruptcy schedules and as soon as the omission was brought to their attention, delivered the same to their attorney for turnover to the Chapter 7 Trustee; and that when they filed their bankruptcy schedules they believed that their interest in an oil well had been transferred to a third-party several years previously. The Debtors allege that material issues of controverted fact preclude summary judgment in favor of either plaintiff.

**III. UNCONTROVERTED FACTS.**

The Court has reviewed all of the pleadings of the parties and determined that the following facts relevant to the motions for summary judgment are not controverted:

1. Debtors filed a voluntary petition for relief pursuant to Chapter 7 on October 27, 2003.

---

[11] Adversary No. 04-5161, Complaint, Count III; Adversary No. 04-5083, Complaint Count II.

[12] Adversary No. 04–5083, Complaint, Count I.

2. D. Michael Case (Chapter 7 Trustee) was appointed to serve as Trustee of the Debtors' bankruptcy estate.

3. Debtor Gregory C. Downing is a physician with gross income of $562,870 in 2001, $828,342 in 2002, and $427,232 and 2003 .

4. As of the date Debtors' bankruptcy petition was filed, the Debtors' unsecured debt totaled $7,480,409 and secured debt totaled $1,882,464.

5. The Petition for Relief, the Schedule of Assets, Liabilities, Income and Expenses, and Statement of Financial Affairs filed October 27, 2003 (collectively the Bankruptcy Pleadings) were signed by each of the Debtors under penalty of perjury.

6. The Debtors' schedules, which were filed on the date Debtors' bankruptcy was commenced, disclose: (I) The Debtors had no coin or other collections, or collectibles; (ii) had furs and jewelry with a current market value, without deducting any exemption, of $1000; and (iii) had no interest in partnerships or joint ventures.

7. The first meeting of creditors (341 Meeting) was held December 1, 2003.

8. At the 341 Meeting, the Debtors testified under oath that the Bankruptcy Pleadings were true and correct.

9. The Debtors homeowners' insurance policy included additional coverage for the following property of the Debtors: Jewelry $26,126, which value included $15,070 for a ladies 18 karat gold ring with marquise diamond; and fur coat $16,500.

10. With the exception of "furs and jewelry" valued at $1,000, none of the foregoing listed insured property was included in the Debtors' Bankruptcy Pleadings, nor did their Bankruptcy Pleadings disclose a transfer of any of the foregoing items enumerated in the insurance policy.

11. By letter to Debtor's counsel dated January 12, 2004, the US Trustee advised the Debtors that they needed to amend their schedules to provide "full disclosure." The letter also reminded the Debtors that -

> ... they have signed their bankruptcy schedules under penalty of perjury. The additional items discovered by the United States Trustee should have been disclosed in the debtors' original bankruptcy pleadings. The debtors should be aware of the ramifications, ranging from sanctions, to denial of discharge, that may follow as a result of their failure to make initial disclosure, as well as a disclosure of any and all additional assets.

12. On January 12, 2004, the Debtors offered to purchase all of their jewelry (with the exception of a diamond tennis bracelet which could not be located) for $5,000.

13. Subsequently, on February 17, 2004, the Debtors filed an amended Schedule B in which they disclosed: (I) Coin collection valued at $25,000; (ii) jewelry valued at $10,765; (iii) fur coat valued at $30; and (iv) one half interest in D. G. Properties, oil well production, valued at $900. The amended Schedule B was signed by each of the Debtors under penalty of perjury.

14. An appraisal dated January 31, 2004, prepared by Ed Mast, valued the "18K ring w/appx 2.40 ct Marquis diamond" at auction value for $8,500-$9,000. The Mast Appraisal included three other items of jewelry auction-valued at $1,200 total.

15. Following the Mast Appraisal, the Debtors increased their offer to purchase the jewelry to $8,000.

7

16. The Chapter 7 Trustee accepted the Debtors' offer to "redeem" the jewelry listed on the amended Schedule B for $8,000.

17. The US Trustee objected to the redemption/sale, because the jewelry's value was most probably in excess of the value set forth on Debtors' amended Schedule B, and as a result, an independent, professional appraisal should be obtained before any sale was consummated.

18. The US Trustee retained Stewart's of Wichita to appraise the Debtors' jewelry. The appraisal of Stewart's of Wichita (Stewart Appraisal) placed a total value on Debtors' jewelry of $62,454, which included a value of $39,444 for the 18 karat gold diamond ring.

19. The Chapter 7 Trustee's Notice Of Intent To Accept Debtors' Offer of Redemption for $8,000 was withdrawn after the Chapter 7 Trustee received the Stewart Appraisal.

20. The gold coins, platinum and fine silver, all undisclosed by the Debtors on the original Schedule B, were sold by the Chapter 7 Trustee for $27,036.90.

21. The only offer the Chapter 7 Trustee had for the fur coat was from the Debtors to purchase the fur coat for $1,000 payable over time.

22. The Debtors provided personal financial statements to creditors dated December 31, 1988 and December 31, 2002.

23. On November 1, 2004, the Debtors obtained from Tim Thomas, owner of Daddy's Pawn Shop, an offer to purchase a portion of the jewelry.

24. The offer from Tim Thomas established that the pawn shop would be willing to pay over $10,000 for 11 items of jewelry, which did not include the 18 karat gold diamond ring.

25. The pawn shop would offer for sale Mary Downing's 18 karat gold diamond ring for "somewhere around $24,000."

26. The Debtors obtained an appraisal of the jewelry, the Barrier Appraisal I, on January 29, 2005, from Barrier's Gemological Laboratory. It valued the 18 karat gold diamond wedding ring at $15,300 and the remaining items of jewelry at $14,110.

27. The Barrier Appraisal I states its purpose is "fair market value" and its function is "bankruptcy."

28. Gregory Downing obtained an appraisal from Barriers Gemological Laboratory on December 19, 2000 for a "Ladies Diamond Pendant," which valued the pendant at $9,757.

29. The purpose of the Barrier Appraisal I was to determine the fair market value of the jewelry.

30. Fair market value, as apposed to retail replacement value, is used for bankruptcy appraisals.

31. A jewelry appraisal is a kind of guideline. It may not be what the jewelry would bring on the open markets; that takes a buyer who wants it.

32. Three trustees testified that jewelry typically sold for 10% of its value.

33. Ten percent of the value placed on Debtors' jewelry exclusive of the wedding ring by the Barrier Appraisal I is $1,411.

34. The only actual offer to buy the jewelry is from Daddy's Money Pawn Shop.

35. The Daddy's Money offer to purchase the jewelry exclusive of the 18 karat gold diamond wedding ring is $2,378.00.

36. Three trustees testified that they have never taken a debtor's wedding ring and to their knowledge a trustee in Wichita has never taken a wedding ring.

35. When the Chapter 7 Trustee obtained the Mast Appraisal, he did not feel that the Debtors' offer to purchase the jewelry including the wedding ring for $8,000.00 was unreasonable.

36. The coins were delivered to the Debtors' attorney, who immediately after having them appraised, delivered them to the Chapter 7 Trustee.

37. The Debtors made an insurance claim for the missing tennis bracelet and turned the proceeds over to the Trustee.

**IV. CONTROVERTED FACTS**.

The Court finds that the following relevant facts are controverted facts based upon a review of the pleadings:

1. What values for the jewelry and fur coat should have been listed on the Debtors' bankruptcy schedules.

2. The circumstances of and the reason for the valuation of the jewelry made by Ed Mast.

3. The purpose of and standard used by Barrier's Gemological Laboratory when making an appraisal of jewelry dated January 9, 2005.

4. The reason why the Debtors did not list Mrs. Downing's wedding ring in their initial bankruptcy schedules.

10

5. Whether the Debtors are truthful when stating that they believed that the jewelry, excluding the wedding ring, was reasonably worth approximately $1000 when they signed the bankruptcy schedules and confirmed their accuracy at the 341 Meeting.

6. The activities of the Chapter 7 Trustee in relation to the jewelry, the fur coat, the coin collection, and the interest in the oil well and the reasons for such actions.

7. Whether the Debtors are truthful when stating that they forgot to list the coin collection on their initial bankruptcy Schedule B.

8. Whether the Debtors are truthful when stating that when completing their bankruptcy schedules, they believed that their interest in an oil well had been transferred to a third-party several years before.

9. The value which the estate could realize from a sale of the nonexempt jewelry.

10. The circumstances which resulted in the Debtors' turning over the coin collection to the Trustee, making an insurance claim for the tennis bracelet, and disclosing their interest in the oil well.

11. The circumstances which the Debtors contend explain the omission of assets from their bankruptcy schedules which were included on financial statements dated December 31, 1998, and December 31, 2002.

## V. ANALYSIS AND CONCLUSIONS OF LAW.

### A. DENIAL OF DISCHARGE PURSUANT TO SUBSECTION 727(a)(4)(A) FOR ISSUANCE OF A FALSE OATH.

Both the US Trustee and North American assert that the Debtors should be denied discharge under subsection 727(a)(4)(A) because of alleged false oaths in the Debtors' initial Schedule B,

submitted under oath, which omitted and/or under-valued jewelry and a fur coat and failed to disclose a coin collection and an interest in an oil well. They also allege false oaths based upon the values for the jewelry and the fur coat in the Debtors' amended Schedule B.

Subsection 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless -
> ***
> (4) the debtor knowingly and fraudulently, in or in connection with the case -
> (A) made a false oath or account;

"In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an [false] oath, and that the oath relates to a material fact."[13] Omissions of property from the schedules[14] and the overstatement of an exemption amount may constitute a false oath.[15] "But a false statement that has no effect in the case is not grounds for denying a discharge."[16]

The Court denies the assertions of both the US trustee and North American that summary judgment should be entered denying discharge because of the Debtors' alleged undervaluation of their jewelry and the fur coat in their initial bankruptcy schedules and their amended Schedule B. The record

---

[13] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997).

[14] *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990).

[15] *See Parnes v. Parnes (In re Parnes)*, 200 B.R. 710 (Bankr. N.D.Ga. 1996) (holding that a discharge was not barred by §727(a)(2)(A) for overstating exemptions because debtor's reliance on the advice of his counsel led the Court to conclude that the debtor did not have the necessary fraudulent intent).

[16] 6 *Collier on Bankruptcy* ¶727.04[1][b](Alan N. Resnick & Henry J. Sommer, eds.-in-chief 15th ed. Rev. 2005), citing *Coccia v. Fischer (In re Fischer)*, 4 B.R. 517 (Bankr. S.D. Fla. 1980).

12

contains different opinions as to value. The Court without hearing evidence can not determine what value should have been stated on the schedules. The cases[17] which the US Trustee relies upon for support of the argument that undervaluation of jewelry under oath constitutes a basis for the denial of discharge were decided following trial. Although the Court agrees that under some circumstances undervaluation may constitute a false statement, the uncontroverted facts before the Court do not provide a basis for such a ruling.

There are also controverted facts concerning whether the Debtors acted knowingly and with fraudulent intent, assuming an error in the values. The parties moving for summary judgment would have the Court rely upon uncontroverted circumstantial facts. The Debtors deny the implication of fraud which might arise from the uncontroverted facts by asserting that when filing their initial schedules they understood that the wedding ring did not need to be listed and that values as listed, without the ring, were in their judgment reasonable. The valuation evidence and the testimony of the trustees, when construed in the Debtors' favor as the Court must do when ruling on a summary judgment motion, add credence to the Debtors' position.

Finally, the Court notes that, depending upon the proper values, there may be an issue of whether the inaccurate values were material. The Chapter 7 Trustee has testified that the listings which the Debtors filed put him on notice to inquire about further assets, which he did. The amount which the estate might realize from the sale of the nonexempt jewelry has not been determined. In the

---

[17] *Union Bank of the Middle East, Ltd. v. Farouki (In re Farouki)*, 133 B.R. 769 (Bankr. E.D. Va. 1991); *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 208 B.R. 69 ( 9th Cir. B.A.P. 1997), *reversed In re Weiner*, 161 F.3d 1216 (9th Cir. 1998) The recent opinion of this Court denying discharge in *In re Haneke*, Case No. 02-13894, Adv. No. 02-5244 (Bankr. D. Kan. April 11, 2005) was also following trial .

circumstance of this case where the unsecured debt was approximately $7,480,000, the estate's loss of an asset worth a few thousand dollars is much less significant than it would be in a case where the unsecured debts are under a hundred thousand dollars.

The Court also denies summary judgment based upon the Debtors' failure to disclose the coin collection and the ownership of an interest in an oil well in their initial schedules. Controverted issues of material fact preclude the Court from finding that such omissions were knowing and fraudulent. The US Trustee and North American have provided evidence from which one could infer knowing a concealment. On the other hand, the Debtors state that they forgot to list the coins on their initial schedules and, as soon as the omission was brought to their attention, delivered the coins to their attorney who, after having them appraised, delivered them to the Chapter 7 Trustee. As to the oil and gas lease, the Debtors state that when they filled out their schedules, they believed that this asset had been transferred to a third party several years before filing. The Court cannot reach a conclusion on these issues without hearing testimony and evaluating the credibility of witnesses.

**B. DENIAL OF DISCHARGE FOR FRAUDULENT CONCEALMENT PURSUANT TO SUBSECTION 727(a)(2).**

The US Trustee also alleges that the Debtors should be denied discharge pursuant to subsection 727(a)(2)(A) because they intentionally concealed that they owned valuable, nonexempt personal property by omitting material information from their initial schedules. This claim, like the claim previously discussed under subsection 727(a)(4)(A), focuses upon the Debtors' valuation of jewelry and a fur coat and the complete omission from their initial schedules of a coin collection and an interest in an oil well.

Subsection 727(a)(2)(A) provides:

14

> (a) The court shall grant the debtor a discharge, unless –
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or a officer of the court charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of the petition.

In order for the Debtors to be denied a discharge under this section, the US Trustee must show by a preponderance of the evidence that (1) the Debtors transferred or concealed (2) property of the estate, (3) within the one year period prior to filing for bankruptcy relief, (4) with the intent to hinder, delay or defraud a creditor.[18] Failure to list valuable property on Schedules is "strong evidence of concealment."[19] If assets are omitted from schedules, "actual intent may be established by circumstantial evidence, or by inferences drawn form a course of conduct."[20]

As to the failure to list the coins and the interest in an oil well, the first element is established because of the failure to include the property in the schedules. The property was owned by the Debtors and was not exempt, so the second element is satisfied. The third element is satisfied because the concealment occurred within one year of filing of the petition. The determinative issue is whether there is evidence of actual intent to hinder, delay, or defraud creditors. On this element, the Court finds controverted issues of material fact.

---

[18] *In re Brown*, 108 F.3d at 1293.

[19] *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 53 (Bankr. D. Kan. 1987).

[20] *Id.*, *see In re Brown*, 108 F.3d at 1293 n.1 (stating "inference of fraudulent intent from a concealment is greater than from a transfer").

15

The US Trustee would have the Court enter summary judgment based upon the Debtors' omission of their coin collection and interest in an oil well from their initial Schedule B, the inclusion of their coin collection in financial statements prepared pre-petition, and their alleged pattern of under-valuing exempt and nonexempt jewelry. This evidence implies fraudulent intent, but it is not sufficient to grant summary judgment in face of the Debtors' statements as to their reasons for omitting the coins and the oil well. The credibility of the Debtors and other witnesses, which cannot be determined on summary judgment, will be important to the Court's decision.

To the extent the US Trustee alleges fraudulent concealment because of allegedly knowing use of inaccurate valuations of jewelry and furs, the Court denies summary judgment because of controverted issues of material fact relating to value and intent.

## VI. CONCLUSION.

For the foregoing reasons, the Court denies the United States Trustee's motion for summary judgment in Adversary No. 04–5083 and North American Savings Bank's motion for summary judgment on Count III of Adversary No. 04-5161. Controverted issues of material fact preclude summary judgment on these claims under subsection 727(a)(2) and subsection 727(a)(4)(A).[21] Trial will be necessary to resolve these claims.

**IT IS SO ORDERED.**

### 

---

[21] The US Trustee frequently cites this Court's recent opinion in *In re Haneke*, No. 02-13894, Adv. No. 02-5244. The denial of discharge in that case followed trial on the merits in which the Court had the opportunity to evaluate the credibility of the Debtor and other witnesses.